**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Craten, et al., | No. CV-15-02587-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Foster Poultry Farms Incorporated, | |
| Defendant. | |

On January 31, 2018, Defendant Foster Poultry Farms ("Foster Farms") filed a Pretrial Motion for Judgment as Matter of Law Regarding Plaintiff's Punitive Damages Claim. (Doc. 275.) The motion seeks judgement under either Federal Rule of Civil Procedure 50 or Rule 12(c). During the final pretrial conference, the Court set an expedited briefing schedule on the motion to ensure that the issue could be resolved prior to the start of trial.

After receiving full briefing (Docs. 280, 283), the Court issued an order denying Foster Farms' motion to the extent it is brought under Rule 50 because, in the Ninth Circuit, a court "may not grant a motion filed under Rule 50 prior to the presentation of any evidence in a case." *McSherry v. City of Long Beach*, 423 F.3d 1015, 1021 (9th Cir. 2005); *see also Ervco, Inc. v. Texaco Refining and Marketing, Inc.*, 428 Fed. App'x 725, 727 (9th Cir. 2011) ("Our circuit law clearly holds that Rule 50 [judgment as a matter of law] . . . cannot be granted before the trial has begun and the party's evidence on that

issue has been fully heard *by the jury*." (emphasis in original)). The Court noted, however, that Foster Farms is not without a remedy. "Among the panoply of Federal Rules of Civil Procedure are several mechanisms for a party to obtain a pre-trial dismissal of an action . . . : a motion for dismissal for failure to state a claim pursuant to Rule 12(b)(6), a motion for judgment on the pleadings under Rule 12(c), and a motion for summary judgment under Rule 56." *McSherry*, 423 F.3d at 1020.

Accordingly, on the morning of February 13, 2018, prior to the start of trial, the Court heard oral argument on Foster Farms' Rule 12(c) motion. After hearing from the parties, the Court granted Foster Farms' motion from the bench and advised that this written order would follow.

**I. Background**

In 2013, then 17 month-old Plaintiff N.C. contracted salmonellosis and subsequently experienced severe complications. N.C.'s parents, Plaintiffs James and Amanda Craten, believe N.C.'s illness was caused by raw chicken processed by Foster Farms. In December 2015, the Cratens brought this action on behalf of N.C., alleging negligence, strict liability, and breach of the implied warranty of merchantability claims against Foster Farms. Foster Farms moved for summary judgment on all claims in March 2017.

In July 2017, two weeks after responding to Foster Farms' motion, the Cratens moved for leave to amend their complaint to add a prayer for punitive damages. Foster Farms opposed the Cratens' motion, arguing that the proposed amendment was untimely, futile, and prejudicial because Foster Farms had already moved for summary judgment and, therefore, would be deprived of the opportunity to dispose of the punitive damages issue as a matter of law. The Court ultimately granted the Cratens' motion. In so doing, the Court acknowledged that a degree of prejudice will result from Foster Farms' inability to move for summary judgment on the punitive damages issue. The Court reasoned, however, that the prejudice did not outweigh the liberal amendment policy of the Federal Rules of Civil Procedure in part because the issue would become moot if

Foster Farms prevailed on its motion for summary judgment, and because Foster Farms still could obtain judgment as a matter of law under Rule 50 should the Cratens fail to present sufficient evidence to support their punitive damages request at trial.

As it turns out, the first of these circumstances did not come to pass. In January 2018, the Court granted summary judgement for Foster Farms on the Cratens' strict liability and breach of implied warranty claims, but denied the same with respect to the Cratens' negligence claim to the extent it is based on state law duties that parallel the requirements of the Poultry Products Inspect Act. As a result, punitive damages remain at issue. Foster Farms now seeks to dispose of the punitive damages issue as a matter of law before the presentation of evidence.

**II. Legal Standard**

A motion for judgment on the pleadings under Rule 12(c) "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). "Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). Thus, a motion for judgment on the pleadings should not be granted if the complaint is based on a cognizable legal theory and contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). When ruling on a Rule 12(c) motion, the Court limits its review to the content of the pleadings and matters properly subject to judicial notice. *See Intri-Plex Tech., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**III. Discussion**

Preliminarily, Rule 12(c) allows a party to move for judgment "[a]fter the pleadings are closed—but early enough not to delay trial." The Cratens filed their

amended complaint on November 6, 2017, and the pleadings closed with Foster Farms' answer on November 20, 2017. Because the punitive damages issue would have been moot if Foster Farms obtained summary judgment on all claims, it was reasonable for Foster Farms to wait until after the Court resolved its summary judgment motion before taking further action. The Court issued its ruling on the summary judgment motion on January 19, 2018, and Foster Farms filed the instant motion less than two weeks later. Further, the Court set an expedited briefing schedule to ensure that the motion would not delay trial. The Court therefore finds that Foster Farms' Rule 12(c) motion is timely and, in fairness, should be resolved before trial.

On the merits, Foster Farms argues that the Cratens are not entitled to punitive damages as a matter of law because (1) Arizona law expressly prohibits recovery of punitive damages against a seller that sells a product with the approval or conditional approval of a government agency and (2) no reasonable jury could conclude that Foster Farms acted outrageously or with an evil mind. (Doc. 275 at 9-10.) Foster Farms contends that the Court may grant its motion based solely on the pleadings and three facts properly subject to judicial notice: (1) "[the United States Department of Agriculture Food Safety Inspection Service ("USDA-FSIS")] approved for sale all chicken products that Foster Poultry Farms sold in the marketplace during the relevant time period," (2) "Salmonella bacteria are killed with proper cooking," and (3) "USDA-FSIS approves for sale raw chicken meat that contains Salmonella." (Doc. 283 at 4.)

The Court doubts that it may find for Foster Farms on its second, alternative argument regarding the sufficiency of the Cratens' evidence without considering matters outside the pleadings. The Court need not address this argument, however, because it agrees that Arizona law expressly prohibits punitive damages under these circumstances. Specifically, in 2012, Arizona enacted A.R.S. § 12-689, which in relevant part states:

> [a] manufacturer, service provider or seller is not liable for exemplary or punitive damages if . . . [t]he product alleged to have caused the harm was designed, manufactured, packaged, labeled, sold, or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license or similar determination of a government

- 4 -

agency.

The Court can judicially notice the fact that the USDA-FSIS inspected and approved for sale all of the raw chicken sold by Foster Farms during the relevant time period (indeed, the Court previously took judicial notice of this fact when ruling on Foster Farms' summary judgment motion). Although several Notices of Intended Enforcement ("NOIEs") issued to Foster Farms by the USDA-FSIS in 2013 indicate that the agency was concerned with processing conditions at the three California facilities and was prepared to suspend assignment of inspectors and withhold marks of inspection if Foster Farms did not take corrective measures, the USDA-FSIS nonetheless continued to mark as wholesome and approve for sale the chicken processed at these facilities throughout the outbreak period. Accordingly, the product at issue here—raw chicken—was either approved or conditionally approved for sale by a government agency.

Likely due to § 12-689's relative infancy, there is no binding precedent interpreting the statute and the Court has found only one case applying it: *Hess v. Bumbo International Trust*, CV 13-944 TUC DCB, 2014 WL 12527216 (D. Ariz. Sept. 11, 2014). *Hess* "involve[d] a child seat called the Bumbo Seat, which parents use to sit infants in an upright position when they are too young to sit up on their own so that caregivers can feed, play and interact with the child." *Id.* at *1. The plaintiffs were parents of an infant, B.H., who fell out of the seat and suffered a severe skull fracture. *Id.* They brought a products liability and negligence action against the manufacturer of the seat, alleging that the seat was defectively and negligently designed and marketed, and seeking compensatory and punitive damages. *Id.* at *1, 8.

The manufacturer moved for summary judgment on all claims, which the district court denied. With respect to the punitive damages issue, the manufacturer argued that § 12-689 precluded the plaintiffs from recovering punitive damages because the manufacturer had recalled the product the year before the incident to add warnings against using the seat on an elevated surface, and the Consumer Product Safety Commission ("CPSC") later approved the seat for sale with these warning modifications.

*Id.* at *8.

In response, the plaintiffs argued that "the 2007 recall did not address the injury at issue in this case: the dangers of using the Bumbo Seat on the floor." *Id.* at *9. Specifically,

> B.H.'s injury occurred in 2008, in between a 2007 recall of the Bumbo Seat that resulted in new warnings advising consumers that children can escape from the seat and advising against placing the seat on raised surfaces, and a 2012 recall, resulting in the addition of seatbelts to restrain children placed in the seat to prevent them from sustaining serious injuries.

*Id.* at *1. The plaintiffs cited a CPSC memo to the manufacturer related to the 2012 recall, "which indicate[d] that the 2007 approval was not materially relevant to the specific risk at question, here: the risk of coming out of the seat on a hard-surface floor." *Id.* at *9.

The district court agreed with the plaintiffs and concluded that § 12-689 did not apply:

> The 2007 recall approved warning language to prevent the use of the Bumbo Seat on elevated surfaces. The 2012 recall required a design modification to add a seatbelt. The 2007 recall approvals by CPSC, whatever they might have entailed, do not protect Bumbo, pursuant to A.R.S. § 12-689(A)(1), in respect to the pre-2012 Bumbo Seat design defect. B.H. was injured after the 2007 recall and before the 2012 recall.

*Id.* at *9.

The Cratens contend that their case is like *Hess*. They argue that the USDA-FSIS's inspection and approval of Foster Farms' chicken for sale cannot be interpreted as an approval of the products contaminated with Salmonella Heidelberg because the USDA-FSIS's inspection process during the relevant time period did not include comprehensive testing of all chicken products for the bacteria. They also contend that the 2013 NOIEs demonstrate that the USDA-FSIS did not approve of the processing conditions at the three facilities associated with the Salmonella outbreak. The Cratens fail to appreciate, however, that § 12-689 speaks to "the product alleged to have caused

the harm" and not to the conditions at the manufacturer's facilities. Though the USDA-FSIS might have voiced concerns about Foster Farms' processing conditions, it indisputably approved for sale the products themselves despite knowledge of these conditions. Furthermore, unlike in *Hess*, the government agency responsible for approving the products at issue here never demanded a recall or otherwise retroactively withdrew its marks of inspection and approval. The Court therefore finds that the Cratens' punitive damages request is not cognizable.

**IV. Conclusion**

"In Arizona, punitive damages are awarded only in the most egregious of cases, where it is proved by clear and convincing evidence that the defendant engaged in reprehensible conduct and acted with an evil mind." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 995 (Ariz. Ct. App. 2008) (quotations, citations, and alterations omitted). Punitive damages may not be awarded "based on gross negligence or mere reckless disregard of the circumstances." *Volz v. Coleman Co., Inc.*, 748 P.2d 1191, 1194 (Ariz. 1987). In enacting § 12-689, Arizona made clear that a manufacturer's conduct does not rise to this level of egregiousness when the product alleged to have caused harm was approved for sale by a government agency. Accordingly, although a jury reasonably could find that Foster Farms acted negligently or recklessly, a jury cannot as a matter of law find that Foster Farms acted so reprehensibly that punitive damages are warranted when the government agency responsible for regulating the safety of its products allowed them to be sold to the public.[1]

//

//

//

//

---

[1] This finding is not inconsistent with the Court's order granting the Cratens' motion or leave to amend their complaint. Though the Court found at that time that the Cratens' proposed amendment was not futile, Foster Farms did not raise § 12-689 in its opposition brief. The Court therefore did not consider whether § 12-689 barred punitive damages as a matter of law.

**IT IS ORDERED** that Foster Farms' Rule 12(c) motion (Doc. 275) is **GRANTED**.

Dated this 13th day of February, 2018.

Douglas L. Rayes
United States District Judge