**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Craten, et al., | No. CV-15-02587-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Foster Poultry Farms Incorporated, | |
| Defendant. | |

Before the Court is Defendant Foster Poultry Farms Incorporated's ("Foster Farms") Motion for Judgment as Matter of Law Pursuant to Federal Rule of Civil Procedure 50(a) (Doc. 315), which is fully briefed (Docs. 363, 366). For the following reasons, the motion is denied.

**I. Background**

In 2013, then 17 month-old Plaintiff N.C. contracted salmonellosis and subsequently experienced severe complications. N.C.'s parents, Plaintiffs James and Amanda Craten, brought this action in December 2015, alleging that N.C.'s illness was caused by raw chicken processed by Foster Farms. The Cratens' amended complaint asserted negligence, strict liability, and breach of the implied warranty of merchantability claims. (Doc. 223.)

On March 31, 2017, Foster Farms moved for summary judgment on all claims. (Doc. 137.) Foster Farms argued that the Cratens' claims failed as a matter of law

because: (1) the Cratens could not prove causation, which is necessary element of all their claims; and (2) the Cratens' claims are preempted by the Poultry Products Inspect Act ("PPIA"). Alternatively, Foster Farms argued that partial summary judgment should be entered on the Cratens' breach of implied warranty and strict liability claims because Foster Farms' chicken was safe for its intended use and the warning labels Foster Farms utilized are approved by the United States Department of Agriculture Food Safety and Inspection Service ("USDA-FSIS").

On January 19, 2018, the Court granted in part and denied in part Foster Farms' motion for summary judgment. (Doc. 245.) On the question of causation, the Court concluded that, viewing the evidence in the light most favorable to the Cratens, there was sufficient circumstantial and expert witness evidence to permit a jury to infer that N.C. contracted his illness from Foster Farms chicken. On the question of preemption, the Court concluded that the PPIA preempted the Cratens' claims predicated on allegedly inadequate warnings and labels, but that the Cratens' negligence claim was not preempted to the extent it was predicated on duties that parallel federal law. Finally, the Court agreed with Foster Farms that, under Arizona law, the Cratens could not sustain strict liability or breach of implied warranty claims because Salmonella bacteria are killed through proper cooking and, therefore, Foster Farms chicken is safe when used as intended.

The parties thereafter proceeded to an eleven-day jury trial on the Cratens' negligence claim. On February 23, 2018, the eighth day of trial, Foster Farms notified the Court that it intended to file a written motion for judgment as a matter of law pursuant to Rule 50(a). The Court informed the parties that it intended to give the Cratens adequate time to respond to the motion. Foster Farms filed its Rule 50(a) motion the following day. (Doc. 315.)

In the meantime, the parties continued with trial. On March 1, 2018, the jury entered a verdict finding Foster Farms to be 30% at fault for N.C.'s injuries, and assigning the remaining 70% of fault to the Cratens themselves. (Doc. 345.)

| | |
|---|---|
| 1 | A week later, the Cratens filed their response to Foster Farms' Rule 50(a) motion. |
| 2 | (Doc. 363.)  Foster Farms thereafter filed its written reply (Doc. 366), and the Court took |
| 3 | the matter under advisement. |

**II. Legal Standard**

Rule 50(a) permits the court to grant judgment as a matter of law if a party has been fully heard on an issue and the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"  Where, as here, "the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Fed. R. Civ. P. 50(b). The Rule 50 standard is the same as the standard for granting a motion for summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986).  Thus, when considering a Rule 50 motion, the court must view the evidence in the light most favorably to the nonmoving party, "draw all reasonable inferences in that party's favor, and it may not make creditability determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).

**III. Discussion**

In its Rule 50 motion, Foster Farms reasserts its position that the Cratens have insufficient evidence that N.C.'s illness was caused by exposure to Foster Farms' products, and that the Cratens' negligence claim is preempted by the PPIA.  (Doc. 363.) The Court rejected these arguments when first raised in the context of Foster Farms' motion for summary judgment.  Having carefully considered the briefing on Foster Farms' Rule 50 motion, the Court finds no reason to conclude differently now.

**A. Causation**

Under Arizona law, the Cratens "need only present probable facts from which the casual relationship reasonably may be inferred."  *Robertson v. Sixpence Inns of Am., Inc.*,

789 P.2d 1040, 1047 (Ariz. 1990). "Although a mere possibility of such causation is not enough, the plaintiff is not required to prove his case beyond a reasonable doubt and he need not negate entirely the possibility that defendant's conduct was not a cause." *Purcell v. Zimbelman*, 500 P.2d 335, 342 (Ariz. Ct. App. 1972). Thus, as the Court explained in its order denying summary judgement for Foster Farms, "under the preponderance of the evidence standard, the Cratens need only convince a jury that it is more likely than not that Foster Farms was the source." (Doc. 245 at 15.)

The Cratens proffered sufficient circumstantial evidence to support that inference here. For example, epidemiologist Kirk Smith opined that N.C.'s salmonella infection "very likely came from a Foster Farms chicken meal in the household." (Doc. 324 at 14.) Smith's conclusion was based on the fact that Arizona was the state with the second highest number of outbreak cases, that N.C. contracted his infection during the peak of the outbreak, that the particular strain of Salmonella that N.C. contracted was relatively rare, that Foster Farms samples testified positive for the strain of Salmonella that infected N.C. roughly 200 times higher than normal, and that the Craten family sometimes ate Foster Farms chicken. (*Id.* at 15-16, 19-21, 24, 30-31, 43, 100.) The Cratens also admitted into evidence exhibits that bolstered Smith's conclusions. (*See* Exs. 427, 504, 614, 627A, 627B.)

As for evidence that N.C. was exposed to Foster Farms chicken products during the relevant time period, N.C.'s aunt, Heather Lewallen, testified that she purchased Foster Farms and Tyson chicken, often with cash, and that the Cratens and Lewallens often would eat together. (Doc. 338 at 11, 16.) Further, Foster Farms' Vice President of Retail Sales, Kevin Mooney, testified that Foster Farms shipped millions of pounds of chicken to Arizona retailers, including retailers frequented by the Craten and Lewallen families, during 2013. (Doc. 365 at 13.)

In arguing for judgment as a matter of law, Foster Farms highlights evidence unfavorable to the Cratens' case and urges the Court to draw other inferences from the circumstantial evidence relied upon by the Cratens. Foster Farms also relies on legal

authorities previously cited to and considered by the Court during the summary judgment phase. But, as the Court previously explained, just because "[a] jury hearing this evidence reasonably could find that N.C. did not contract salmonellosis from raw chicken associated with the Foster Farms outbreak," does not mean that "a jury could not reasonably reach the opposite conclusion." (Doc. 245 at 14.) Nothing in the Foster Farms' Rule 50 briefing leads the Court to deviate from that conclusion.[1]

**B. Preemption**

The Court discussed at length its reasons for concluding that the Cratens' negligence claim was not preempted by the PPIA in is order denying summary judgment for Foster Farms. (Doc. 245.) Foster Farms' Rule 50 motion largely reasserts those same arguments. The Court will not repeat its summary judgment analysis here. Instead, the Court will address a point discussed more thoroughly in the Rule 50 briefing than in the summary judgment briefing: the impact of certain USDA guidance cited by the Court in its summary judgment order.

In concluding that the Cratens' negligence claim is not preempted by the PPIA, the Court acknowledged that two circuit courts have concluded that Salmonella on raw chicken is not an adulterant under 21 U.S.C. § 453(g)(1) and (g)(4). *See Am. Public Health Ass'n v. Butz*, 511 F.2d 331 (D.C. Cir. 1974); *Supreme Beef Processors Inc., v. United States Dep't of Agric.*, 275 F.3d 432 (5th Cir. 2001). Neither of these cases, however, squarely considered § 453(g)(3), which states that chicken may be deemed adulterated "if it consists in whole or in part of any filthy, putrid, or decomposed substance or is for any other reason unsound, unhealthful, unwholesome, or otherwise unfit for human food."

This language is quite broad, and given the absence of case law interpreting it, the

---

[1] Contrary to Foster Farms' argument, the Cratens are not relying on an otherwise impermissible "market share" theory of liability. Instead, they rely on epidemiological evidence, expert witness testimony, and other circumstantial evidence to support the inference that, although N.C. could have contracted salmonellosis from a different source, he more likely than not contracted it from Foster Farms chicken, probably purchased by with cash by the Lewallens, and likely transmitted secondarily to him from his grandmother.

Court found instructive a notice issued by the USDA in December 2012, in which the agency explained: "When [raw] poultry or meat products are associated with an illness outbreak and contain pathogens that are not considered adulterants, FSIS likely will consider the product linked to the illness outbreak to be adulterated under 21 U.S.C. [§] 453(g)(3) . . . because the product is "* * * unsounds, unhealthful, unwholesome, or otherwise unfit for human food." *HAACP Plan Reassessment for Not-Ready-To-Eat Comminuted Poultry Products and Related Agency Verification Procedures Notice*, 77 Fed. Reg. 72686-01 (Dec. 6, 2012), available at 2012 WL 6043195. The Court therefore concluded that there are at least some circumstances under which Salmonella on raw chicken, which is not an adulterant under § 453(g)(1) and probably not an adulterant under § 453(g)(4), can be deemed an adulterant under § 453(g)(3), specifically when the products are associated with an illness outbreak. (Doc. 245 at 11.)

In its Rule 50 motion, Foster Farms argues that reliance on the USDA guidance is misplaced because the guidance is legally non-binding. This might be true, but the Court did not reach its conclusions at the summary judgment stage because it believed the USDA guidance to be binding. Instead, the Court noted that neither *Butz* nor *Supreme Beef* squarely addressed § 453(g)(3)'s broad definition of adulteration, and given the lack of case law interpreting this provision, the Court found the agency's own interpretation more instructive than cases interpreting other provisions of the PPIA.

Foster Farms also argues that the guidance should not be given any weight because it contradicts the plain language of the PPIA, but this is an overstatement. The Court acknowledges that the guidance's interpretation of § 453(g)(4) is in tension with *Supreme Beef*, but there is nothing about the broad language of § 453(g)(3) that is plainly inconsistent with the USDA's interpretation. Accordingly, for essentially the same reasons discussed in the Court's order denying summary judgment, the Court denies Foster Farms' motion for judgment as a matter of law to the extent it is based on preemption principles.[2]

---

[2] Foster Farms argues, alternatively, that even if the Cratens' negligence claim is not preempted, they offered no evidence that Foster Farms products during the outbreak

**IT IS ORDERED** that Foster Farms' Rule 50 motion (Doc. 315) is **DENIED**. The Clerk of the Court shall enter judgment in accordance with the jury's March 1, 2018 verdict.

Dated this 18th day of September, 2018.

_____
Douglas L. Rayes
United States District Judge

---

period satisfied the USDA guidance's definition of adulterated. The Court disagrees. The Cratens offered sufficient circumstantial evidence that, even though USDA chose not to withhold approval and marks of inspection, conditions existed at certain Foster Farms plants that could have led to such action. This, too, is a point the Court addressed in its summary judgment order. (Doc. 245 at 11-12.)